LINDELL REAL ESTATE COMPANY v. LINDELL *et al.*; ELLEN DAVIS, *Appellant.*

Division One, December 7, 1897.

142   61
146   516
142   61
159   25

142   61
92a  4 34
142   61
172  9 212

142   61
101a   214
101a  5 398

1. **Review of Judgment.** The statute providing for a review of a judgment on application of a defendant, who has not appeared or been summoned, but was brought in by publication, requires such defendant to show that the petition, upon which such judgment was procured, is untrue in some material matter, or that he has and then had a good defense thereto, setting it forth.

2. ———: ALLEGATIONS OF PETITION. In a suit to review a judgment the allegations of the petition will be taken as true in considering whether or not it states a ground for review.

3. **Pleading:** SUFFICIENCY OF PETITION FOR REVIEW OF JUDGMENT IN PARTITION: STATUTE OF LIMITATIONS: CASE STATED. The petition filed in 1895, for a review of a judgment in partition, stated that plaintiff had purchased the one thirty-sixth part of the estate devised by Jesse Lindell to Jesse Lindell, Jr., and the deed therefor was conveyed in trust for her use to Jamison as her trustee; that Jamison, as such trustee, executed a deed of trust to Cline to secure a note for $10,000, which was signed by her, and payable to the order of Hoyle, and Cline sold the property under the deed of trust to Ferguson, who, on the day the property was deeded by Cline to him, entered into an agreement with her trustee Jamison, in his own name, that he would reconvey the property to Jamison on the payment of the debt and interest; and this agreement was put of record; but that Jamison, in 1884, conveyed the property to Logan Dameron, who had notice, and he without consideration conveyed to his son Edward Dameron, who had notice, and Edward paid the note and got a deed from Ferguson's administrator, although Jamison, as her trustee had paid the interest on the note for five years; that she was made a defendant in the partition suit, and, being a non-resident, was brought in by publication, without summons, the petition alleging that her interest was nothing, and judgment by default was entered against her; that the court ordered that one thirty-sixth of the estate, being the share of Jesse Lindell, Jr., be paid to Edward Dameron. *Held,* that the petition

stated a good cause for a review of the judgment in the partition suit. *Held,* also, that the statute of limitations, it being eleven years after the sale by Jamison till this petition in review was filed, could not be invoked against the petitioner, who had all along been a married woman. *Held,* also, that the court in the partition suit could adjudicate the issues between plaintiff and Dameron.

4. **Married women**: STATUTE OF LIMITATIONS. The mere fact that a married woman, by the statutes of 1889, is given power to sue as a *feme sole,* with or without joining her husband, does not permit the statute of limitations to be invoked against her because of her failure to sue within the time prescribed for suits by men.

5. **Laches.** In order to charge one with laches it must appear that the other party has been injured by the delay. Mere lapse of time is not sufficient.

6. ———: MARRIED WOMEN. At common law, where a married woman remained under the disability of coverture, she could not be guilty of laches. The same rule that protected her from the statute of limitations shielded her from the imputation of laches.

7. ———: REMAINDER. Where the interest sought to be regained by plaintiff because of a breach of trust by her trustee, is a remainder in land, and the lifetenant has been living all the time during which plaintiff is charged with laches, there is no occasion for such prompt action by the remainderman in asserting her rights as might have existed had there been a beneficial interest in, or adverse possession of, the premises.

8. **Laches**: CASE REVIEWED. The circumstances of this case reviewed, and it is *held* that plaintiff is not precluded by laches.

9. **Partition**: RES ADJUDICATA OF PARTITION SUIT. A judgment in partition vests in each party to whom allotment is made the title of all the parties to the suit. By the decree in this case Dameron was vested with the absolute title of plaintiff and plaintiff adjudged to have no right or interest therein. *Held,* that such a decree would be an absolute bar to plaintiff's assertion of her right to the estate decreed to Dameron in a separate suit, and that she was not relegated to an independent suit against her trustee for selling the land to Dameron in breach of his trust.

10. ———: ———: PETITION FOR REVIEW. A review of a judgment in partition does not disturb the decree as to the rights of any of the cotenants except those whose rights are brought in issue by the petition for review.

*Appeal from St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Thomas J. Rowe* and *Joseph S. Laurie* for appellant.

(1) Appellant's petition for review is in accordance with the provisions of the statute. R. S. 1889, secs. 2022, 2209, 2217, 2219, 2220; Freeman on Judg., sec. 105; Black on Judg., sec. 312; *Irving v. Leyh,* 102 Mo. 200; *Jones v. Driskill,* 94 Mo. 190; *Bagley v. Sligo Furnace Co.,* 120 Mo. 248; *Schmidt v. Neumyer,* 100 Mo. 207; *State ex rel. v. Scott,* 104 Mo. 26, 30; *Tennyson v. Tennyson,* 49 Mo. 110; *Campbell v. Garton,* 29 Mo. 343; *Randolph v. Stone,* 58 Mo. 155. (2) The claim of the petitioner, Mrs. Ellen Davis, is not barred by the statute of limitations, because she was, as her petition alleges, a married woman at the time her cause of action accrued, and has been such ever since. R. S. 1889, sec. 6767; *Throckmorton v. Pence,* 121 Mo. 50; *Arnold v. Willis,* 128 Mo. 145; *Brown v. Dressler* 125 Mo. 589; *Latlie-Morrison v. Holladay,* 39 Pac. Rep. 1100; *Hurlbut v. Wade,* 40 Ohio St. 603; *Alsup v. Jordan,* 69 Tex. 300; *Lippard v. Troutman,* 72 N. C. 551. (3) An act allowing a *feme covert* to sue or be sued alone concerning her separate property, does not remove the disability of coverture so as to allow the statute of limitations to bar her action. *Campbell v. Crater,* 95 N. C. 156; *North v. James,* 61 Miss. 761; 2 Wood on Lim., sec. 240. (4) Laches can not be imputed to a person not *sui juris,* and hence not to a married woman; coverture is a sufficient excuse for not asserting her rights by suit. *Kroenung v. Goehri,* 112 Mo. 641; *Ferguson v. Soden,* 111 Mo. 208; *Napton v. Leaton,* 71 Mo. 358; *Bollinger v. Chouteau,* 20 Mo. 89; *Chew v. Hyman,* 7 Fed. Rep. 16; *Baker v. Morris,* 10

Leigh, 284; *Sims v. Everhardt*, 102 U. S. 300; *Bryan v. Kales*, 134 U. S. 126; *Cole v. Grigsby*, 35 S. W. Rep. 684; *Tate v. Greenlee*, 2 Hawks (N. C.), 486; *Falls v. Torrence*, 2 Hawks (N. C.), 490. (5) But independently of the excuse of coverture, mere lapse of time, for any period short of the statute of limitations, does not constitute laches. The delay must also have operated to the prejudice of the adverse party. *Dunklin County v. Chouteau*, 120 Mo. 577; *Murphy v. DeFrance*, 105 Mo. 53; *Kline v. Vogel*, 90 Mo. 238; *Kelly v. Hurt*, 61 Mo. 463; *Spurlock v. Sproule*, 72 Mo. 503; *Parker v. Hotel Co.*, 34 S. W. Rep. 209.

*John D. Davis* and *Joseph W. Lewis, Jr.*, for respondent.

(1) The petition does not state facts sufficient to justify the court in granting the relief asked. A trustee may purchase the trust property for himself at a public sale, conducted by another trustee, over which sale he has no control, which he does not bring about and can not prevent. *Prevost v. Gratz*, 1 Pet. C. C. 364; *Fisk v. Sarber*, 6 W. & S. 18; *Chorpenning's Appeal*, 32 Pa. St. 315; *Lusk's Appeal*, 108 Pa. St. 152; *Clark v. Holland*, 72 Iowa, 34; *Allen v. Gillette*, 127 U. S. 589; *Earl v. Halsey*, 1 McCart, 332; *Jackson v. Woolsey*, 11 Johns. 446. (2) A trustee may purchase the trust property for himself from a third party who has properly acquired the title. *Wortman v. Skinner*, 12 N. J. Eq. 358; *Munn v. Burges*, 70 Ill. 604; *Bush v. Sherman*, 80 Ill. 160. (3) The petitioner, Mrs. Ellen Davis, is barred by the statute of limitations. She is not exempt from its operations by reason of her coverture. R. S. 1889, sec. 1996, 6864; 13 Am. and Eng. Ency. of Law, 739; *Castner v. Walrod*, 83 Ill. 171; *Kibbe v. Ditto*, 93 U. S. 624; *Brown v. Cousens*, 51 Me. 301; *Ball v. Bullard*, 52 Barb. 141; *Garland Co. v. Gaines*, 47 Ark.

558; *Hayward v. Gunn*, 82 Ill. 385; *Enos v. Buckley*, 94 Ill. 458; *Geisen v. Heiderick*, 104 Ill. 537; *Cameron v. Smith*, 50 Cal. 303; *Sparks v. Roberts*, 65 Ga. 571. (4) The statute of limitations applies in Missouri alike to actions at law and in equity. *Hunter v. Hunter*, 50 Mo. 445; *Rogers v. Brown*, 61 Mo. 187; *Hughes v. Littrell*, 75 Mo. 573; *Dunn v. Miller*, 96 Mo. 324; *Ins. Co. v. Smith*, 117 Mo. 261. (5) In the case of an express trust the statute begins to run against one, who, as a *cestui que trust*, claims the equitable interest from the time that the trustee openly repudiates his trust relation and sets up an adverse claim. *Smith v. Ricords*, 52 Mo. 581; *Buren v. Buren*, 79 Mo. 538; *Hughes v. Littrell*, 75 Mo. 573. (6) The appellant is guilty of laches, and is not entitled to equitable relief. A married woman in relation to her separate equitable estate is a *feme sole*, possessing all the powers and privileges incident to the ownership of property, and subject to the same restrictions. *Walter v. Walter*, 48 Mo. 140; *Rieper v. Rieper*, 79 Mo. 352; Perry on Trusts [4 Ed.], sec. 654; 2 Story's Equity Jur. [13 Ed.], sec. 1368; *Whitesides v. Cannon*, 23 Mo. 457; *Turner v. Shaw*, 96 Mo. 22; *Sprague v. Rooney*, 104 Mo. 349; *Meyers v. Van Wagoner*, 56 Mo. 115. (7) Courts of equity never assist those seeking equitable relief on the ground of fraud, who, having acquired knowledge of the fraud upon which the action is based, indulge in unnecessary delay before invoking the aid of the court. *McKnight v. Taylor*, 1 How. 161; 2 Pomeroy's Eq. Jur. [2 Ed.], sec. 917; *Landrum v. Bank*, 63 Mo. 48; *Bliss v. Prichard*, 67 Mo. 181; *Reel v. Ewing*, 71 Mo. 17; *Kline v. Vogel*, 90 Mo. 229; *Kroenung v. Goehri*, 112 Mo. 641; *Twin Lick Oil Co. v. Marbury*, 91 U. S. 587. (8) In the absence of an explanation the appellant is charged with notice of the fraud from the time the alleged fraudu-

lent proceedings took place. *Hecht v. Slaney*, 72 Cal. 363.

ROBINSON, J.—On August 30, 1892, a suit between the devisees of Jesse G. Lindell, deceased, and their heirs and assigns for the partition of certain real estate in St. Louis, subject, however, to the life estate of Jemima Lindell, the widow of said Jesse G. Lindell, was instituted.

On February 23, 1893, an interlocutory judgment of partition, defining the respective interests of the parties and ordering a sale of the property, was rendered. Afterward the property was sold by a special commissioner, whose report of sale was duly approved, which was followed on May 27, 1893, by final decree. April 1, 1895, the appellant in this proceeding, Ellen Davis, a married woman, and one of the defendants in said cause, appeared in court and filed her petition for review, verified by affidavit, under the provisions of section 2217 and 2220 of the Revised Statutes of 1889. Mrs. Davis is now and was then a nonresident and was not summoned and did not appear to said action, but was brought in by publication. Plaintiff then moved to strike the petition for review from the files for the following grounds:

"*First.* The petition does not set forth facts constituting a good defense to the allegations contained in plaintiff's petition.

"*Second.* It appears from the facts stated in said petition for review that more than ten years have elapsed since the alleged cause of action accrued, and the action is therefore barred by the statute of limitations.

"*Third.* It also appears from the facts stated in said petition for review that the petitioner has been guilty of such laches, that she is not entitled to assert

any claim to the property described in plaintiff's petition.''

Which so-called motion is in effect a demurrer to the petition and has been so treated by all the parties.

The petition for review is in words and figures following, omitting the caption:

"Now comes your petitioner, Ellen Davis, and states to the court that she was made a party defendant in the above entitled cause which was an action instituted in this court on July 30, 1892, by and between the devisees of the late Jesse G. Lindell and their heirs and assigns, for the partition of the real estate therein described, subject to the life estate therein of the said Jemima Lindell; that your petitioner, said defendant, was, at the institution of said suit, and now is, a nonresident of the State of Missouri, and was not summoned in said action, neither did she appear to said suit, nor was she made a party as a representative of anyone who had been summoned or appeared, but was brought in by publication in accordance with the provisions of the statute relating to nonresident defendants; that as to her, a default was granted in said cause and the allegations of the petition taken as confessed, and on the twenty-third day of February, 1893, an interlocutory judgment of partition and an order for the sale of the property was entered; that said judgment undertook to define the respective interests in and to said real estate of the parties therein designated, and directed that inasmuch as partition in kind seemed impracticable, a sale of said property be made by a special commissioner then and there appointed by the court, and that the proceeds of such sale be distributed by said commissioner to the parties mentioned and described, according to their respective interests as defined by said judgment; that (on March 23, 1893), said special commissioner made

his report of the sale of said property, which was duly approved by the court, and (on May 27, 1893) said special commissioner made his final report showing that the whole amount of the purchase money had been paid to him and that he had distributed the same (amounting to $67,089 net) to the parties designated by the court according to their respective interests; that said report was duly approved (on March 27, 1893), and a final judgment in the cause was then and there entered accordingly.

"The petitioner in said cause alleged that your petitioner, defendant therein, claimed to be entitled to the interest in said property which Jesse G. Lindell, Jr., the nephew, or grandnephew of Jesse G. Lindell, deceased, acquired under the will of said testator, but that said interest had, by *mesne* conveyances, passed to William F. Ferguson, deceased (whose heirs and administrators were made defendants therein), and was owned and held by said estate, subject, however, to whatever right thereto which may be finally adjudged in favor of Edward C. Dameron (also defendant therein), under and by virtue of a certain written agreement between William F. Ferguson and one, William C. Jamison, concerning which a suit was then pending on appeal in the Supreme Court of Missouri. The judgment or decree of this court so adjudged and found that your petitioner no longer had any interest in the premises. Said allegations of the petition touching the right, title and ownership of that interest in said property which said Jesse G. Lindell, Jr., acquired under and by virtue of the will of the late Jesse G. Lindell, are untrue and your petitioner has, and then had, a good defense to such action whereby it will appear that she is, and was, entitled to be adjudged the owner of the interest in said property acquired by the said Jesse G. Lindell, Jr., under said will, the

particulars of which are more fully set forth as follows:

" Your petitioner states that she now is, and was prior to the institution of said suit, the wife of George Davis, whom she married in 1868, but that prior to her marriage with him she was the wife of Peter Lindell, a nephew of Jesse G. Lindell, deceased, and that the aboved named Jesse G. Lindell, Jr., was her son born of such marriage; that said son Jesse took, under the will of Jesse G. Lindell, deceased, an undivided one thirty-six part of all the estate, real and personal, of which said testator died seized, subject, however, to the life estate of Jemima Lindell, widow of testator; that on June 24th, 1874, said Jesse G. Lindell, Jr., by his deed of that date, for a valuable consideration conveyed to William C. Jamison all the right, title and interest in and to the estate which he, the said Jesse G. Lindell, had acquired under said will, to have and to hold the same in trust for your petitioner and her heirs forever; said deed described by metes and bounds the real estate intended to be conveyed and includes the property set forth in the above action for partition; that on June 30th, 1874, said Jamison, as her trustee, upon the request of your petitioner, executed a deed of trust of that date, conveying all said property to George W. Cline, as trustee for Charles Hoyle, to secure the payment of a principal note for $10,000, dated June 30th, 1874, payable three years after date, together with six interest notes for $500 each, payable at six, twelve, eighteen, twenty-four, thirty and thirty-six months after date, all of said notes being signed by your petitioner and payable to the order of said Hoyle; that afterwards, to wit, on December 23d, 1879, said trustee, George W. Cline, in pursuance of the power vested in him, under said deed of trust, sold said property at public vendue and William F. Ferguson, then the owner of said $10,000 note, became the

purchaser for the sum of $9,075, and a deed for all of said property was then and there executed to him by said trustee Cline; that the amount thus realized at such sale was for less than the real value of the property; that said sale was made under and by virtue of an agreement by and between said William C. Jamison, your petitioner's trustee, as aforesaid, and said Ferguson that said Ferguson 'will hold said property as security for the said $10,000 and interest thereon from and after January 1st, 1880, at the rate of eight per cent per-annum, payable semi-annually, and when said $10,000 shall be paid and the interest as aforesaid shall be paid, then the said Ferguson will convey to the said Jamison the said real and personal estate or to such person as the said Jamison shall direct; that after the payment of said $10,000 and interest, as aforesaid, the said Jamison shall be the owner and entitled to a conveyance of said property conveyed to said Ferguson by said trustee Cline, as aforesaid, and that the said Jamison will pay the interest as aforesaid when it becomes due as aforesaid;' that said agreement, quoted as above, was then and there, to wit, on December 23d, 1879, reduced to writing and signed by said parties and was duly acknowledged and recorded in the recorder's office of the city of St. Louis; a copy of the same is herewith filed; that said agreement thus entered into, although in the name of said Jamison himself, was really made in his capacity as trustee for petitioner, as well known to said Ferguson; so that said agreement thus inured for the benefit of your petitioner and said Ferguson thereby held said property in trust for her; that said Jamison, your petitioner's trustee, continued to pay the interest to said Ferguson on said sum of $10,000 as required by said agreement until 1884; that on August 6th, 1884, said Jamison executed a deed whereby he conveyed and trans-

ferred to Logan D. Dameron all the right, title and interest in and to all of said property as the same appeared by the agreement aforesaid by and between said Ferguson and Jamison; that such attempted conveyance by Jamison on his own account of any interest in said property to Dameron was a breach of trust on his part and said Dameron accepted said deed with full notice that Jamison had no right or interest in said property under said agreement or otherwise, except as the trustee of your petitioner; and, moreover, said deed to Dameron, although purporting to be for a valuable consideration, to wit, $1,000 cash, was in fact executed solely to protect or indemnify said Dameron from such pecuniary loss as he might sustain by reason of being surety on certain bonds of Jamison as curator and as administrator, wherein said Jamison was a defaulter, he, the said Jamison, being then wholly insolvent; a copy of said deed is herewith filed; that on April 11th, 1891, said Logan D. Dameron executed a deed whereby for a nominal consideration he sold and assigned to his son, Edward C. Dameron, all the right, title and interest to said property as acquired by him under and by virtue of said deed from Jamison to himself; that said deed to Edward C. Dameron was voluntary, and, moreover, the latter accepted the same with full notice of the rights of your petitioner in and to said property under the agreement aforesaid between the said Jamison and Ferguson; that William F. Ferguson died in 1883, and at the June term, 1891, of the probate court of the city of St. Louis, said Edward C. Dameron, as assignee of the rights of Jamison in and to said property, under the agreement aforesaid, instituted a proceeding (to which your petitioner was not a party) to compel the administrator of said Ferguson, Horace Chiselin, to perform said agreement and execute a deed to him, Dameron, conveying all the

property which said Ferguson had acquired under and
by virtue of the deed from Cline, trustee, as aforesaid,
at the same time tendering to said administrator said
sum of $10,000, with eight per cent interest to date
in accordance with the conditions of the agreement
between Jamison and Ferguson; that in said proceed-
ing a judgment was rendered as prayed and upon an
appeal to the St. Louis Circuit Court a judgment of
like effect was entered; that an appeal was taken to
the Supreme Court and said appeal being yet unde-
termined at the date of the aforesaid decree in partition,
this court ordered that the interest acquired by Jesse
G. Lindell, Jr., under said will, to wit, an undivided
one thirty-sixth part in the proceeds of the sale of
said property amounting to $1,863.59, be paid to
Horace Chiselin, administrator of William F. Ferguson,
deceased, subject to such right as might be finally ad-
judged on such appeal in favor of said Edward C.
Dameron, which was accordingly done.

"Your petitioner states that at the time of the
institution of the partition suit herein, there was also
instituted in this court, by the same plaintiff, against
Jemima Lindell *et al.*, a number of other suits for par-
tition between the devisees of Jesse G. Lindell, deceased,
and their heirs and assigns, of the remaining portions of
the real estate of which said testator died seized; to which
actions your petitioner, being a nonresident, was made
a party defendant by publication only and entered no
appearance therein. In some of said suits, partition
in kind being impracticable, the property was sold, and
in others there was partition in kind. In each case
the judgment defining the rights and interests of the
parties was, so far as concerns the undivided 1-36 part,
acquired by Jesse G. Lindell, Jr., under said will, the
counterpart of the judgment herein, giving to the estate
of Ferguson an undivided 1-36 part of the property

subject to the right of Dameron under the agreement aforesaid, as might be finally adjudged upon the determination of the cause then pending on appeal in the Supreme Court.

"Your petitioner states that since the date of the decree herein and the decrees in said other partition suits, said appeal came on to be heard in the Supreme Court and the judgment of this court therein was affirmed; whereupon said Chiselin, as administrator of Ferguson, in pursuance of said final judgment, accounted to said Dameron for the sums which he had thus received in the partition suit wherein there was a sale of the property, said sums aggregating $18,720.75 and executed to said Dameron a deed for all the property which had been allotted to said estate in the cases where there had been a partition in kind, receiving from said Dameron at the same time about the sum of $4,500, which, together with the cash proceeds of the sale previously received by said administrator as aforesaid, was taken as in full payment and discharge of the principal and interest which was required by the agreement aforesaid between Jamison and Ferguson to be paid upon the execution of the deed. Your petitioner states that while it is true as alleged in the petition herein, and likewise in the other partition suits, that the undivided 1-36 interest acquired by Jesse C. Lindell under the said will, passed by *mesne* conveyances to said Ferguson, yet said Ferguson, by reason of the facts aforesaid, held the same in trust for the benefit of your petitioner and it was your petitioner, and not Dameron, who should have been adjudged entitled to the same upon payment to Ferguson or his estate of the sum stipulated in the agreement aforesaid. Your petitioner states that she is satisfied with the partition in this case and the other cases as well and will ratify the same provided, of course, she receives the share or interest

allotted to the estate of Ferguson and transferred to Dameron; and that she is willing to pay whatever sum may be due from her under the aforesaid agreement between her trustee, Jamison, and Ferguson, in order to entitle her to said property.

"In consideration of the premises your petitioner prays that the judgment should be set aside and that she be allowed to answer the petition of plaintiff within such time as the court may direct."

The statute above referred to provides that the defendant, in an action in which he has not been summoned, or shall not have appeared, but is brought in by publication, and in which an interlocutory judgment has been made final, may, within three years after the rendition of such final judgment, appear and upon terms have the same reviewed and for good cause set aside. But in order to obtain such review it devolves upon defendant to show that the petition, upon which such judgment was procured, is untrue in some material matter, or that the party seeking the review has, and then had, a good defense thereto setting it forth. *Jones v. Driskill*, 94 Mo. 190; *Irvine v. Leyh*, 102 Mo. 200.

The learned counsel for plaintiff insists that the facts stated in the petition for review do not disclose a good defense in this, that the petition shows that Jamison purchased the property from W. F. Ferguson, who had properly acquired the title at trustee's sale, over which he had no control, under the Cline deed of trust, and seeks to invoke the rule laid down by a long line of authorities to the effect that a trustee may purchase trust property at a sale brought by a third party, which he had no part in procuring, and over which he could not, and did not, have control. Unfortunately for plaintiff, no such case was presented by the record. The petition for review, which for the purpose of this

case must be taken as true, states that the sale of the trust property was made in pursuance of an agreement between Jamison and Ferguson for the benefit and protection of Mrs. Davis, whereby her equity of redemption therein was to be extended and kept alive. Such being the case, it was a breach of trust on the part of Jamison to convey her right of redemption to Logan Dameron. In this connection it will be observed that the petition for review specifically charges that neither of the Damerons were purchasers for value. Moreover, said Damerons had actual notice that Jamison had no right or interest in said property except as her trustee. It follows from the facts set forth in the petition that Mrs. Davis had an interest in the real estate in question and was entitled to share in the proceeds arising from the sale thereof.

The plaintiff further contends that inasmuch as Mrs. Davis' right of action accrued in August, 1884, and her disability as a married woman was removed by the revision of 1889, and her petition not having been filed until March, 1895, eleven years after Jamison had conveyed the property to Dameron and six years after the removal of her disability, the statute of limitations creates a complete bar to a review of the case. This would doubtless be true but for section 6767 of the Revised Statutes of 1889, which exempts married women from the statute of limitations on account of disability of coverture. So we are brought to the direct question whether sections 1996 and 6864 of the Revised Statutes of 1889, granting to married women the right to sue and to be sued alone, without joining their husbands, with the same effect as *femes sole*, repealed by implication so much of the general statute of limitations (section 6767) as applies to the disability of married women. The question is an important one, involving matters of public policy as well as of private

right, and has given rise to widely differing views on the part of both courts and text writers.

The authorities which deny that the enabling acts relieving a married woman of the disability of coverture, do not operate to repeal, by implication, or modify the exception as to coverture contained in the general statute of limitations before referred to, proceed upon the theory: *First.* Mere ability to sue does not impose an obligation to do so. *Second.* Where a married woman can sue, either with or without her husband, failure to do so will not subject her to a plea of the statute of limitations. The authorities maintaining the opposite view meet this argument in this wise, that when the disability is removed the cause for exemption disappears with it and the exemption itself ceases to exist.

On the whole, the former position would seem to be the more reasonable one. It has the support of Wood on Limitations, and the courts of North Carolina, Mississippi, Texas, Oregon and Ohio, and the same question was directly presented to and passed upon by Division Number Two of this court in *Throckmorton v. Pence,* 121 Mo. 50. But courts of great respectability, notably those of Illinois, Arkansas and Maine, hold a contrary doctrine.

In speaking of the particular disabilities which postpone the running of the statute of limitations as to married women, Wood on Limitations, volume 2, section 240, 99, 579, says: "In those States in which married women are excepted from the operation of the statute, the circumstance that they are by statute clothed with the power of suing and being sued, or even endowed with all the privileges, rights, and liabilities of a *feme sole,* would hardly seem to be sufficient to change the rule, or deprive them of the benefits of the disability if they choose to avail themselves of it; and

the circumstance that the legislature has clothed them with these rights, 'without making any change in the statute of limitations with respect to them, indicates an intention on the part of the legislature that they shall still remain within the exception therein contained." These views are supported in *Lattie-Morrison v. Holladay*, 39 Pac. Rep. (Ore.) 1100; *Hurlbut v. Wade*, 40 Ohio St. 603; *Alsup v. Jordan*, 69 Tex. 300; *State ex rel. v. Troutman*, 72 N. C. 551; *Campbell v. Crater*, 95 N. C. 156; *North v. James*, 61 Miss. 761.

In *Throckmorton v. Pence*, 121 Mo. 50, *supra*, Burgess, J., speaking for the court, uses this language: "It is contended by the defendant that, inasmuch as plaintiff, after being abandoned by her husband, had the legal capacity to sue, then the statute of limitations began to run against her, and . . . therefore, plaintiff's action was barred by the ten-year statute of limitations. This position would be correct but for the provision of section 6767 of the Revised Statutes of 1889. . . . The record discloses that at the time plaintiff's cause of action accrued she was a married woman, and although she might have instituted this suit after the abandonment of her husband, she was still a married woman, and the ten-year statute of limitations was not running against her. . . . . . . Mere ability to sue does not impose an obligation to do so, and for that reason, even though plaintiff could have sued, either with or without her husband, failure to do so during the statutory period did not subject her to a plea of the statute of limitations." This is a clear and emphatic recognition by one division of this court of the doctrine that the right to sue alone conferred upon a married woman by the revision of 1889 does not operate to repeal by implication the exception made in her favor by section 6767.

The whole tenor of our statutes relating to the Married Woman's Acts shows a tendency on the part

of the legislature not to abrogate the exception contained in the general statute of limitations.

While it is true that, by the Married Woman's Acts, as revised in 1889, a married woman in this State has been emancipated to some extent from the common law unity of husband and wife and now stands upon advanced ground more in accordance with enlightened thought and justice; yet it must be borne in mind that the statutory enactments before alluded to do not undertake to confer upon a married woman all of the rights and powers of a *feme sole*. For this reason we are persuaded that the conclusion reached by Division Number Two, in *Throckmorton v. Pence, supra,* is both sound and just. Therefore, we are inclined in this case to adhere to the position taken by Judge BURGESS in that. And it may be added that the trend of recent decisions on the subject seems to be in that direction.

Having come to the conclusion that appellant's right is not barred by the statute of limitations, the next inquiry is, whether she has been guilty of such laches as to preclude a review of the judgment.

The most serious contention of plaintiff is that Mrs. Davis has slept upon her rights for such a length of time that she is precluded by her laches from obtaining the relief sought. Plaintiff urges in this connection that the interest involved is her separate equitable estate, with respect to which, although a married woman, she is subject to the imputation of laches just the same as if she was a *feme sole*.

It is conceded by plaintiff that, as a general rule, a married woman is not subject to the imputation of laches where her legal and ordinary estate only is involved. On the other hand, counsel for appellant urges with equal ability that the property in question having been conveyed to William C. Jamison in trust

for appellant, it was therefore not a separate estate; and that the same spirit of legislation which protects her from the operation of the statute of limitations also shields her from imputation of laches.

The legal title to the interest in controversy passed to William C. Jamison by the deed from Jesse G. Lindell June 4, 1874. The *jus disponendi*, which is the inseparable incident of ownership, was by the terms of the trust deed, it will be observed, expressly reserved and conferred upon her trustee Jamison.

While the rule is settled that courts of equity discountenance laches, and will deny relief where the parties have slept upon their rights for such a length of time that it would be against good conscience and operate as a fraud upon the other party to allow them to be asserted, yet we do not think, under the circumstances disclosed by this appeal, that the right to reopen the case should be denied appellant on account of the delay in asserting her claim. Mere delay or lapse of time, however short of the statutory period, is not of itself sufficient to constitute laches. It must further appear that the other party has been injured by such delay. *Spurlock v. Sproule*, 72 Mo. 503.

In *Kelly v. Hurt*, 61 Mo. 466, it was held that a mere lapse of time short of the time fixed by the statute will not bar a claim to equity relief where the right is clear and there are no countervailing circumstances. There is, however, no definite rule on the subject of laches; each case must be determined upon its own circumstances. *Bradshaw v. Yates*, 67 Mo. 221.

In 12 Am. and Eng. Ency. of Law, page 550, the author says: "Where from delay, the original transaction has become so obscured by lapse of time, loss of evidence and death of the parties as to render it difficult, if not impossible, to do justice, plaintiff

will, by his laches, be precluded from relief." Again at page 572 the same author remarks: "If by delay it has become doubtful whether the parties can be in a condition to produce the evidence necessary for the fair presentation on their part, or if it appears that they have been deprived of any just advantage which they might have had if the claim had been put forward before it became stale and antiquated; or if they have been put to any hardships which might have been avoided by more prompt proceedings, the court will deal with the remedy as if barred. But where the delay has not been prejudicial to the party pleading laches it will not be deemed a bar in the suit in equity if not barred by the analogy of the statute of limitations."

Waiving for the sake of this discussion, the disability of coverture, and applying these principles to the case at bar, how can it be said that the plaintiff, or Dameron, has been injured by the delay? It does not appear that any party or witness has died since August, 1884, when appellant's right of action may be said to have accrued; nor has the transaction, with respect to which relief is claimed, become obscure by the lapse of time; so far as this record shows, it does not appear that any valuable or lasting improvements have been made upon the property in question, nor has any expense been incurred by Dameron, unless, perhaps, in the litigation with Ferguson's administrator instituted in 1891, a proceeding, it will be observed, which was brought about wholly by the failure and neglect of Dameron to make the payments required by the Ferguson agreement from the time of his acquisition of the Jamison interest in 1884, to 1891, when Ferguson's administrator claimed an abandonment of the agreement and refused to accept his tender of the amount due on the contract; and during all this time Mrs. Davis was under the disability of coverture. At com-

mon law, where a married woman remains under the disability of coverture, she could not be guilty of laches. The same rule which protected her from the statute of limitations shielded her from the imputation of laches. In *Brown v. Dressler*, 125 Mo. 589, it is said, while the Married Woman's Acts "contains a liberal and comprehensive grant of power, it does not purport to grant to a married woman all of the powers of a *feme sole.*" The legislature can not be presumed to have made any changes beyond what is expressed or clearly implied under statutory provisions.

As Mrs. Davis did not own a separate estate in the land in question, and not having the right to contract in respect to the interest in question, neither limitations nor laches could be imputed to her.

When the resulting litigation terminated in Dameron's favor, the amount due under the Ferguson-Jamison agreement amounted to about $23,000, while the amount realized from the sales in the partition suits of Mrs. Davis' interest was $18,720.75. By paying the comparatively trifling sum of $4,500 additional thereto, Dameron was enabled to obtain a deed to the interest in question. When Dameron is repaid, as appellant proposes to do, the money he has paid in acquiring the Davis interest, what just complaint can he have at being required to reconvey the interest in question which originally never cost him a dollar? His position with regard to the interest involved in this litigation is such that the plea of laches merits no consideration whatever. Moreover, there is no possible antagonism between the plaintiff and Mrs. Davis. Plaintiff does not claim the interest or share in question, and it is obviously of no concern to plaintiff to whom the same may be adjudged to belong. The interest involved in this controversy was a remainder, and the life tenant was

living all this time and held possession of the property. There was no occasion for such prompt action on the part of Mrs. Davis in asserting her rights as might have existed had there been a beneficial or adverse possession of the premises. Under the circumstances connected with this case, we do not think the doctrine of laches should be applied so as to preclude appellant from opening up the judgment.

The partition suit was not commenced until August, 1892. Had Mrs. Davis appeared therein, it could have been claimed that she, then and now a married woman, had forfeited the right to establish her claim to the interest allotted to Dameron, who, it may be observed in passing, had slept upon his rights from 1884 until 1891. If this be true, it necessarily results that she is in no worse situation when she filed her petition for review within the three years' limit by statute. Being a nonresident, and having been served by publication, and not having appeared, the statute gave her the absolute right, if she has a good defense, to come in at any time within three years after judgment, file an answer, and establish the same.

From the opinion filed by the trial judge at the time he entered the order striking out appellant's petition for review showing his reasons for denying a review of the judgment, it seems that he misconceived the law of the case and proceeded throughout on an erroneous theory, the circuit court holding that "the questions which Mrs. Davis now seeks to have adjudicated were not adjudicated in the partition suit, and hence she is not precluded from asserting them against her trustee in an independent action, notwithstanding the decree." The learned circuit judge also expressed a doubt as to whether the court in a partition suit could adjudicate the questions between Mrs. Davis and Dameron. The jurisdiction in partition proceed-

ings is not, as the trial judge seems to indicate, limited merely to the determination of the rights of parties as cotenants to each other, but questions of title may be determined where the court has once acquired jurisdiction of the subject-matter, including disputes between different parties claiming the same share and the claims of parties claiming adversely, providing, of course, all of the parties are before the court. By section 7145 of the Revised Statutes of 1889 it is provided that the court must ascertain and determine the rights and interests of all parties to the proceeding. And where it shall appear that there are parties claiming the same portion adversely to each other, the court may decide upon such adverse claims. R. S. 1889, sec. 7148. It is the settled practice that adverse and conflicting rights and interests may be settled in the same proceedings for partition of land. *Thompson v. Holden*, 117 Mo. 118; *Earl v. Hart*, 89 Mo. 263; *Holloway v. Holloway*, 97 Mo. 628; *Hamilton v. Armstrong*, 120 Mo. 597.

This court has repeatedly held that a judgment in partition, while it does not create any new title, vests in each party to whom the allotment is made the title of all the parties to the suit, and in case of sale the purchaser acquires the title that all of the parties have at the time the suit was instituted. *Ketchum v. Christman*, 128 Mo. 38; *Holladay v. Langford*, 87 Mo. 577. One who is made a party defendant in a partition suit is required to set up any adverse interest which he may have, and failing to do so, is estopped from setting it up in a subsequent suit between the same parties, the judgment in partition being conclusive as to every right which might have been adjudicated therein. *Bobb v. Graham*, 89 Mo. 200; Freeman on Cotenancy and Partition, sec. 531. Appellant's petition for review charges, among other things, that Jesse G. Lindell, being the

owner of an undivided one thirty-sixth interest in the estate, conveyed the same to Jamison as trustee for appellant; that the same interest was claimed by Dameron and the Ferguson estate, and that Mrs. Davis also asserted title thereto. Both Dameron, Ferguson's heirs and administrators, and also Mrs. Davis, were made defendants in the partition proceedings for the express purpose of determining their rights and securing an adjudication touching the interest involved in this controversy. By the decree Dameron was vested with the absolute title to the Davis interest and Mrs. Davis accordingly adjudged to have no right or interest whatever therein. Such judgment would be an absolute bar to Mrs. Davis asserting any claim whatever to the interest or share in question, as the court has already decided upon such adverse claims.

The opinion proceeds upon the theory that the agreement between Jamison and Ferguson, and the sale of the trust property thereunder, is a breach of trust on the part of Jamison, and that Mrs. Davis has slept upon her rights for such a length of time as to preclude her from asserting any rights to the property. This assumption is in direct conflict with the averments of the petition for review, which, as before stated, must, for the purpose of this case, be taken as confessed. The circuit court seems to have been influenced in refusing to open up the judgment by the fact that the rights of the other cotenants had been adjudicated, the property sold and the funds distributed. Clearly such a view is untenable. A review of the judgment does not disturb the decree in partition as to the rights of any of the cotenants except Dameron. Besides, the purchasers of the property sold are fully protected by the statute, section 2224, Revised Statutes 1889. If the circuit court had granted the petition for review, the rights of all the parties to the suit,

as ascertained and declared in the judgment, except as to Dameron and Mrs. Davis, would remain unaffected, and the only issue to be determined would have been whether Mrs. Davis or Dameron was entitled to the interest set off to him and claimed by her.

If at the time of the commencement of the partition suit Mrs. Davis was entitled to the share or interest in question, the statute, section 2219, guarantees that the *status quo* shall be preserved for three years after the judgment, and that such judgment shall not become absolute until after the expiration of that period. Upon complying with the statutory provision at any time within the period so limited, the judgment will be opened so as to admit her defense. The judgment does not become absolute until the period for review has elapsed. Dameron is still subject to the jurisdiction of the court, and can be required, upon such terms as may be just, to convey to Mrs. Davis the interest set apart to him.

The judgment of the circuit court is reversed and the cause is remanded that facts on the petition for review may be heard and determined upon their merits.

All concur.